1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RICHARD LONDON,                    No. CIV S-07-1489-LKK-CMK-P

12              Petitioner,

13        vs.                           <u>FINDINGS AND RECOMMENDATIONS</u>

14   R.J. SUBIA, et al.,

15              Respondents.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in 2006.  Pending

19   before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's

20   answer (Doc. 6), and petitioner's reply (Doc. 10).

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

**I. BACKGROUND**

2    Petitioner is serving an indeterminate life sentence for two convictions of first-

3 degree murder.  Petitioner appeared at a parole suitability hearing in June 2006, at which time he

4 was represented by counsel.  In denying parole, the Board of Prison Terms ("Board") noted the

5 following: (1) the facts of the commitment offense; (2) petitioner's escalating history of pre-

6 conviction criminal conduct; (3) petitioner's unstable social history; (4) petitioner's prison

7 disciplinary record; (5) the need to engage in further self-help programming; and (6) the lack of

8 concrete, goal-oriented parole plans.

9    As to the commitment offense, the Board stated:

10     . . . The panel noted it was carried out in an especially cruel and
callous, and multiple victims were attacked and killed in the same

11  incident – Wilbert Jackson and Sally Voye.  The offense was carried out in
a very dispassionate and calculated manner such as an execution-style

12  murder in that the victims were followed from a party.  You waited for
them to get out of your vehicle, I think you described, for approximately

13  30 minutes; and then, because your crime partner indicated that they
wanted to do it now, they were both shot inside of the vehicle; and

14  subsequently the crime partner took the remaining four rounds that were in
the .38 caliber weapon you had, returned, and fired an additional four

15  rounds in the vehicle.  The offense was carried out in a manner which
demonstrates exceptionally callous disregard for human suffering in that

16  we had multiple shots fired into a very confined area, killing both victims.
And the motive for the crime – I think you described it today – was

17  militant politics with respect to Mr. Jackson, with respect to Ms. Voye was
an unfortunate companion choice, that she certainly didn't fit the profile or

18  there was no indication that she fit the profile. . . .

19 The Board commented on petitioner's pre-offense criminal history as follows:

20     . . . So far as the previous record, we did note that you did have an
escalating pattern of criminal conduct and violence and there had been a

21  history of unstable and tumultuous relationships with others.  You railed
from society's previous attempts to correct your criminality through

22  juvenile camp, county jail, parole, and the prior prison term.  So far as
criminality, it consisted of burglary, petty theft, Health & Safety

23  violations, receiving stolen property, and violations of probation and
parole.  There is also an indication that, with respect to social history,

24  drugs and gangs were a significant influence, including the use of heroin at
the age of 16. . . .

25

26 / / /

2

Next, the Board commented on petitioner's institutional behavior:

> . . . So far as your institutional behavior, you've done well. The one thing we're going to encourage you to do is make sure, before the next hearing, you do an Olsen Review and that all of your N.A. and other chronos, that you know are in existence, are contained inside of the C-File.  So far as the misconduct while incarcerated, we noted that you had six 128(a) counseling chronos, the last one being 11 of 2000 for the improper hanging of items in your cell.  And the last 115 was then July 20, 2000, for delaying a peace officer.  You've had a total of 12. . . .

The Board next discussed petitioner's institutional programming:

> . . . Recommendations to you for your behavior institutionally, one of the things that we're going to encourage you to do is explore re-entry workshop options.  See what you can do to identify any new programs that may be available.  If there are no programs available, any material that you can review with respect to re-entry workshops or re-entry issues.  Also, to the degree that you can, identify any anger management and stress reduction programs or readings in anger management and stress reduction. Likewise, the area of communications – anything that's available to you in the area of communications.  And, basically, the reason we're giving this to you is we think you'll be a more viable candidate; and these are the things that we want you to focus on between now and your next hearing. . . .

As to anger management, the record reveals that petitioner completed a four-session course in November 2006 – after the June 2006 parole suitability hearing.  There is no evidence of the completion of any anger management programming before November 2006.  Finally, as to petitioner's parole plans, the Board stated:

> . . . The other thing that I'm going to encourage you to do – I think you're a bright person and you can sit down and do this – and that would be to sit down and actually write out what your business plan and your goals are going to be upon your release.  You may have – it wasn't before us today – you may have done that, because once you identify your goals, then, of course, that's going to set in motion the steps that you are going to have to take – at what sequence – because you can't do everything all at once. And to tell you the truth, the length of time you've been down, just getting out is going to be rather overwhelming, so I would encourage you – have legitimate goals, but also have legitimate ideas as to the timeframe and don't take too big of a bite out of the apple, just because nine times out of ten what that will do is it would frustrate you as opposed to taking small gains and increasing the gains over a period of time. . . .

The Board also stated: "So far as parole plans, your parole plans are – they're very good."

3

Petitioner challenged the decision with a petition for writ of habeas corpus filed in the San Francisco County Superior Court.  In denying relief, the court stated:

> The decision of the Board reveals that cruelty and callousness of the commitment offense was only one of the reasons petitioner was denied parole.  The Board noted that there were multiple victims who were killed execution style in a dispassionate manner (evidenced by the time spent waiting to commit the murder).  Furthermore, the motive for the crime was militant politics, and one victim was not involved in the political group.
> The Board also noted that petitioner had not participated in any anger management programs even though he had a history of being disrespectful, disobedient, and violent while in prison.  He was asked to participate in anger management and stress reduction programs.  He was also asked to explore re-entry workshop options.  If he was not able to partake in a formal program, he was asked to read books and other materials and report what he learned.
> According to the Board's decision, petitioner's history showed an escalating pattern of criminal activity and a history of unstable relationships, particularly with his father.  He had failed previous grants of parole.  His criminality began at a very early age.  The Board did note positive aspects of the petitioner's conduct, and asked that he continue to remain disciplinary free, and earn "positive chronos."
> Because the Board relied on "some evidence" for its decision, the petitioner is not entitled to relief.

The California Court of Appeals and California Supreme Court both summarily denied relief.


## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

4

(9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

5

1  created by state conduct at trial because the Court had never applied the test to spectators'

2  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

3  holdings.  See Carey, 549 U.S. at 74.

4  　　　　　In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

5  majority of the Court), the United States Supreme Court explained these different standards.  A

6  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

7  the Supreme Court on the same question of law, or if the state court decides the case differently

8  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

9  court decision is also "contrary to" established law if it applies a rule which contradicts the

10  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

11  that Supreme Court precedent requires a contrary outcome because the state court applied the

12  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

13  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

14  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

15  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

16  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

17  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

18  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

19  　　　　　State court decisions are reviewed under the far more deferential "unreasonable

20  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

21  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

22  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

23  that federal habeas relief may be available under this standard where the state court either

24  unreasonably extends a legal principle to a new context where it should not apply, or

25  unreasonably refuses to extend that principle to a new context where it should apply.  See

26  Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

6

1   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

2   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

3   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

4   even where the federal habeas court concludes that the state court decision is clearly erroneous.

5   See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

6   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

7   As with state court decisions which are "contrary to" established federal law, where a state court

8   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

9   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

10

11                              **III.  DISCUSSION**

12              Petitioner argues that the Board's decision was not based on some evidence of his

13   dangerousness at the time.  Specifically, he argues: (1) the Board impermissibly relied solely on

14   the facts of the commitment offense;  (2) there is no nexus between the factors cited by the Board

15   and his dangerousness at the time of the hearing in 2006; and (3) petitioner was denied the right

16   to an individualized determination because the Board merely applied an unwritten blanket "no

17   parole" policy.  Respondents argue: (1) petitioner does not have a federally protected liberty

18   interest in parole; (2) petitioner received all the process he was due because he was provided

19   notice of the hearing and an opportunity to be heard; (3) even if the "some evidence" standard

20   applies, the factors cited by the state court meet this standard.

21              In Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit

22   sitting en banc held that there is no federal stand-alone substantive due process right to parole.

23   See 603 F.3d 546, 555 (9th Cir. 2010) (en banc).  Any substantive due process interest in parole

24   arises solely from state law creating the right.  See id.  The Ninth Circuit overruled its prior

25   decisions in Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms,

26   461 F.3d 1123 (9th Cir. 2006), and  Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the

                                          7

1    extent [they]. . . might be read to imply that there is a federal constitutional right regardless of

2    whether state law entitles the prisoner to release. . . ." Hayward, 603 F.3d at 555.

3              Turning to whether California's parole scheme creates any substantive due

4    process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself,

5    entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law

6    may supply a predicate for that conclusion." Id. at 561.  The court then discussed California law,

7    including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008),

8    and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that ". . . as a matter of state law, 'some

9    evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in

10   California." Id. at 562.  The court then provided the following instructions for resolving parole

11   claims in the context of AEDPA:

12              Since the "some evidence" requirement applies without regard to
                whether the United States Constitution requires it, we in this case, and
13              courts in this circuit facing the same issue in the future, need only decide
                whether the California judicial decision approving the . . . decision
14              rejecting parole was an "unreasonable application" of the California "some
                evidence" requirement, or was "based on an unreasonable determination of
15              the facts in light of the evidence."

16              Id.

17   The en banc court concluded that Hayward had properly been denied parole because the nature of

18   the commitment offense combined with an unfavorable psychological evaluation provided "some

19   evidence" under California law of future dangerousness.  See id.

20              Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v.

21   Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state

22   court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with

23   the state requirement is mandated by federal law, specifically the Due Process Clause."  606 F.3d

24   606, 609 (9th Cir. 2010) (per curiam).  The court observed that "[t]he principle that state law

25   gives rise to liberty interests that may be enforced as a matter of federal law is long-established."

26   Id.

1    As has been clearly stated by the Ninth Circuit, California law provides the

2  contours of the substantive due process right to parole at issue in this case.  Under California law,

3  one year prior to an inmate's minimum eligible parole release date, the Board will set a date for

4  an eligibility hearing.  See Cal. Penal Code § 3041(a).   A release date shall be set unless release

5  currently poses an unreasonable risk of danger to society.  See Cal. Penal Code § 3041(b).  The

6  paramount concern in determining parole suitability in California is public safety.  See In re

7  Dannenberg, 34 Cal.4th 1061 (2005).  This requires an assessment of the inmate's current

8  dangerousness.  See In re Lawrence, 44 Cal.4th at 1205.  Such an assessment requires more than

9  "rote recitation of the relevant factors with no reasoning establishing a rational nexus between

10  those factors and the necessary basis for the ultimate decision – the determination of current

11  dangerousness."  Id. at 1210.

12    California regulations set forth various circumstances which tend to show

13  suitability and others which tend to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).

14  Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the

15  commitment offense, where the offense was committed in an especially heinous, atrocious, or

16  cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable

17  relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of

18  severe mental problems related to the offense; and (6) serious misconduct while in prison.

19  Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably

20  stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant

21  history of violent crimes; (5) realistic plans for release; and (6) participation in institutional

22  activities indicating an enhanced ability to function within the law upon release.  See Cal. Code

23  Regs., tit. 15 § 2402(d).  The regulations are designed to guide the Board's assessment regarding

24  whether the inmate poses an "unreasonable risk of danger to society if released from prison," and

25  thus whether he or she is suitable for parole.  In re Lawrence, 44 Cal.4th at 1202.  There must be

26  a rational nexus between the facts cited by the Board and the ultimate conclusion on

1   dangerousness.  See id. at 1227.

2           Regarding reliance on the facts of the commitment offense, the denial of parole

3   may be predicated on the commitment offense only where the Board can point to factors beyond

4   the minimum elements of the crime that demonstrate that, at the time of the suitability hearing,

5   the inmate will present an unreasonable risk of danger to society if released.  See In re

6   Dannenberg, 34 Cal.4th at 1071.  While the Board cannot require an inmate to admit guilt in

7   order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

8   § 2236, the Board must consider the inmate's past and present attitude toward the crime and any

9   lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code

10  Regs., tit. 15, §§ 2402(b), 2402(d)(3).  "Lack of insight" is probative of unsuitability only to the

11  extent that it is both demonstrably shown by the record and rationally indicative of the inmate's

12  current dangerousness.  See In re Calderon, 184 Cal.App.4th 670, 690 (2010).

13          In light of the precedents outlined above the court concludes that petitioner has a

14  protected liberty interest in parole arising from state law.  The court also concludes that the

15  contours of the substantive guarantee required to protect that liberty interest are defined by state

16  law and that under California law parole may not be denied unless there is "some evidence" of

17  the inmate's dangerousness at the time of the parole eligibility hearing.  Respondents' arguments

18  to the contrary are rejected.

19          Applying the "some evidence" standard to the facts of this case, the court finds

20  that the state court's decision was neither an unreasonable application of that test nor based on an

21  unreasonable determination of the facts.  In making this finding, the court notes that the Board

22  observed that petitioner's institutional behavior had been good and that his parole plans were

23  good, though the Board would have liked to see more evidence of realistic goal-setting.  Aside

24  from the immutable factors concerning the commitment offense and pre-offense history, the

25  Board largely relied on petitioner's lack of anger management and stress reduction programming

26  as the reason to deny parole.  The court finds this reliance proper in that the record establishes a

1   lack of any anger management programming completed prior to the June 2006 hearing and there

2   is a reasonable nexus between petitioner's failure to take advantage of rehabilitative

3   programming and a likelihood that petitioner will re-offend if released on parole.  This is

4   particularly so given the role anger and violence played in the commitment offense.

5

6                                 **IV.  CONCLUSION**

7           Based on the foregoing, the undersigned recommends that petitioner's petition for

8   a writ of habeas corpus (Doc. 1) be denied and that all pending requests/motions be denied as

9   moot.

10          These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

12   after being served with these findings and recommendations, any party may file written

13   objections with the court.  Responses to objections shall be filed within 14 days after service of

14   objections.  Failure to file objections within the specified time may waive the right to appeal.

15   See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17    DATED: August 12, 2010

18

19                         **CRAIG M. KELLISON**
                        UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26