1

2

3

4

5

6

7

8  **IN THE UNITED STATES DISTRICT COURT**

9  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  RICHARD LONDON,                          No. CIV S-07-1489-LKK-CMK-P

12            Petitioner,

13      vs.                                   <u>ORDER</u>

14  R.J. SUBIA, et al.,

15            Respondents.

16  _____/

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254. Petitioner challenges the decision of the California Board of Parole

19  Hearings (hereinafter "Board") to deny him parole at his June 22, 2006 parole consideration

20  hearing. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. §

21  636(b)(1)(B) and Local Rule 302.

22        On August 13, 2010, the Magistrate Judge filed Findings and Recommendations

23  ("F&Rs") herein, which were served on all parties and which contained notice to all parties that

24  any objections to the F&Rs were to be filed within twenty days. Petitioner has filed objections to

25  the F&Rs.

26        In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this

1  court has conducted a de novo review of this case. Having carefully reviewed the entire

2  file, this court declines to adopt the F&Rs.

### I. BACKGROUND

**A. Procedural Background**

In 1978, petitioner Richard London was convicted in California state court of two counts

of first degree murder. He received a sentence of seven years to life in state prison. In June 2006,

petitioner appeared at his eleventh parole suitability hearing. In denying parole for one year, the

Board determined that petitioner was "not yet suitable for parole, and would pose an

unreasonable risk of danger to society or a threat to public safety if [] released from prison."

Petitioner subsequently sought habeas corpus relief in the San Francisco County Superior

Court. In denying relief, the court stated that "because the Board had found 'some evidence' for

its decision, the petitioner is not entitled to relief." The California Court of Appeals and

California Supreme Court also denied relief.

**B. Parole Board Findings**

The Board based its conclusion that petitioner was "not yet suitable for parole" on a

number of factors, including the nature of the commitment offense, petitioner's pre-offense

criminal and unstable social history, and petitioner's conduct while incarcerated. <u>See</u> Parole

Hearing Transcript, Doc. No. 7, Exhibit 2 at 84-90 ("Transcript").

As to the commitment offense, the Board noted that the crime was carried out in a callous

and cruel manner which demonstrated disregard for the lives and suffering of others. Transcript

at 85. The Board also discussed petitioner's pre-offense criminal and social history. It described

petitioner's history as "unstable" and found that petitioner had a history of "tumultuous

relationships with others" and had engaged in an "escalating pattern of criminal conduct,"

including drug and gang involvement. Transcript at 87-88. The Board did note, however, that the

petitioner had been a gang dropout since 1989 and had been drug-free since 1996. Transcript at

55-56; Exhibit 7 at 3. Additionally, petitioner had actively participated in Narcotics Anonymous

1    ("N.A.") since 1991, see Exhibit 7 at 3, had served as a Vice-Chairman of N.A. and as a mentor

2    to other inmates participating in the N.A. program. See Transcript at 63-64.

3          The Board then evaluated petitioner's institutional behavior. Petitioner had received a

4    total of twelve 115 disciplinary reports, ten of which took place between 1980 and 1989.[1] Exhibit

5    6; Transcript at 70. Petitioner's last disciplinary report for engaging in violent behavior occurred

6    in 1989 — over seventeen years before the 2006 hearing. Exhibit 6. Petitioner's most recent

7    disciplinary report was written in July 2000. Exhibit 6; Transcript at 70. It charged petitioner

8    with delaying a peace officer, a violation of 15 Cal. Code. Regs. § 3005(b).[2] However, the

9    charged offense was classified as administrative rather than serious. Exhibit 6; see Transcript at

10   70. Petitioner also had six 128 counseling chronos.[3] Transcript at 70. The last one occurred in

11   2000 for "the improper hanging of items in petitioner's cell." Id. The Board commended

12   petitioner for remaining discipline free since 2000, but noted that petitioner had not participated

13   in an anger management program. See Transcript at 70, 90. Nonetheless, the Board instructed

14   petitioner to participate in programming that would help him develop skills to deal with stress

15   and anger in a healthy manner in order to become a "more viable candidate." Transcript at 90.

16         The Board also discussed petitioner's most recent psychiatric report, concluding that it

17   was "very favorable." Transcript at 90-91. It indicated that petitioner had no disciplinary

18

19        [1] Pursuant to Cal. Code Regs. tit. 15, § 3312(a)(3), a CDC-115 Rules Violation Report
     documents prisoner misconduct believed to be a violation of law or otherwise not minor in
20   nature. A CDC-115 Rules Violation Report can be administrative, which is governed by Cal.
     Code Regs., tit. 15, § 3314, or serious, which is governed by Cal. Code Regs., tit. 15, § 3315. See
21   Cal.Code Regs., tit. 15, § 3313 ("Reports shall be classified as administrative or serious pursuant
     to sections 3314 and 3315.")
22
          [2] Section 3005(b) states that "[i]nmates [] must promptly and courteously obey written
23   and verbal orders and instructions from department staff. . . ."

24        [3] A "128(a) counseling chrono" refers to the California Department of Corrections Form
     128-A, Custodial Counseling Chrono. The form is used "[w]hen similar minor misconduct recurs
25   after verbal counseling or if documentation of minor misconduct is needed." Cal.Code Regs., tit.
     15, § 3312(a)(2).
26

1   infractions involving violence since 1989; that he had maintained strong family bonds throughout

2   his incarceration; and that he had successfully participated in work, education, vocations, and

3   self-help programs while incarcerated. Exhibit 7 at 4. The report also noted that petitioner

4   accepted responsibility for his crime. It stated that petitioner seemed to have resolved the

5   underlying issues for his crime —— substance abuse and gang affiliation —— and had changed

6   significantly. Exhibit 7 at 5. Given those factors and the petitioner's age and length of

7   incarceration, the report concluded that petitioner was at low-risk for violence and would be able

8   to re-integrate fairly easily. Exhibit 7 at 4.

9       Finally, the Board examined petitioner's parole plans. The Board found the plans were

10  "very good," noting that petitioner had support from friends and family, including two sisters and

11  a friend that were willing to take him in. See Transcript at 44, 90. His job prospects included

12  working at a rehabilitation facility or at an uncle's furniture store. Transcript at 44. After

13  examining all the evidence, however, the Board concluded that the positive aspects of

14  petitioner's circumstances did not outweigh the other factors of unsuitability.

15                                      **II. STANDARD**

16      A federal habeas petition filed after April 26, 1996, is governed by the Antiterrorism and

17  Effective Death Penalty Act of 1996 ("AEDPA"). See Lind v. Murphy, 521 U.S. 320, 336

18  (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert.

19  denied, 522 U.S. 1099 (1998). A court will not issue a writ of habeas corpus unless it is shown

20  that the state court decision denying relief was "contrary to, or involved an unreasonable

21  application of clearly established federal law as determined by the United States Supreme Court"

22  or "was based on an unreasonable determination of the facts in light of the evidence presented in

23  the State court proceeding." 28 U.S.C. § 2254(d)(1); Irons v. Carey, 505 F.3d 846, 850 (9th Cir.

24  2007); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). For

25  California parole cases, "federal habeas courts must accord due deference to the state court

26  decision and thus must determine whether the California judicial decision approving the

4

1   governor's [or the parole board's] decision rejecting parole was an unreasonable application of the

2   California 'some evidence standard' or was based on an unreasonable determination of the facts

3   in light of the evidence." Cooke v. Solis, 606 F.3d 1206, 1208 (9th Cir. 2010) (internal

4   quotations omitted); Pearson v. Muntz, 606 F.3d 606, 608-09 (9th Cir. 2010); Hayward v.

5   Marshall, 603 F.3d 546, 563 (9th Cir. 2010) (en banc).

6          Under California law, with respect to an eligible "life prisoner," the Board "must

7   'normally set a parole release date' before the minimum term has been served," but "a life

8   prisoner shall be found unsuitable for parole and denied parole if, in the judgment of the [Board],

9   the prisoner will pose an unreasonable risk of danger to society if released from prison." In re

10  Dannenberg, 35 Cal. 4th 1061, 1091 n.11 (2005) (quoting 15 C.C.R. § 2402(a)); see also In re

11  Lawrence, 44 Cal. 4th 1181, 1202-03 (2008). The Board determines whether a prisoner is

12  currently too dangerous to be released on parole by examining criteria set forth in regulations.

13  See 15 C.C.R. § 2402; Irons, 505 F.3d at 851-52. However, the key inquiry is not whether "some

14  evidence" supports the presence or absence of a particular § 2402 factor.   Rather, the key inquiry

15  is whether some evidence supports the conclusion that the prisoner currently poses an

16  unreasonable risk of danger to society. See In re Lawrence, 44 Cal. 4th at 1205; In re Roderick,

17  154 Cal. App. 4th 242, 264 (2007); see also Cooke, 606 F.3d at 1214. There is "some evidence"

18  to support a finding if there is at least "a modicum" of evidence. Lawrence, 44 Cal. 4th at 1227.

19  There also must be a nexus between the factors that are cited by the Board or the Governor and

20  the determination of current dangerousness. See Lawrence, 44 Cal. 4th at 1210; In re Rico, 171

21  Cal. App. 4th 659, 686 (2009); In re Palermo, 171 Cal. App. 4th 1096, 1107 (2009). The denial

22  of parole will not be upheld where the Board "attaches significance to evidence that forewarns no

23  danger to the public or relies on an unsupported conclusion." In re Tripp, 150 Cal. App. 4th 306,

24  313 (2007).

25         With respect to the commitment offense, the California Supreme Court has explained:

26         [T]he Board or the Governor may base a denial-of-parole decision upon the

circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety. Accordingly, the relevant inquiry for a reviewing court is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor.

Lawrence, 44 Cal. 4th at 1221. Thus, the nature of the commitment offense may combine with other factors, such as post-incarceration history or current mental state and demeanor, to support a finding of unreasonable dangerousness. See id. at 555; see also Hayward, 603 F.3d at 562. Depending upon the circumstances, however, factors such as the passage of time and the prisoner's age may make continued reliance on unchanging factors like the nature of the commitment offense unreasonable. See Lawrence, 44 Cal. 4th at 1225; Roderick, 154 Cal. App. 4th at 276; In re Elkins, 144 Cal. App. 4th 475, 497-510 (2006); Lee,143 Cal. App. 4th 1400, 1412 (2006).

### III. ANALYSIS

The Magistrate Judge found that the state court's decision denying relief was "neither an unreasonable application of [the some evidence] test nor based on an unreasonable determination of the facts." ECF No. 16. at 10. He premised this conclusion on the Board's reliance on petitioner's lack of participation in anger management and stress reduction programming in finding petitioner unsuitable for parole. See id. He concluded that there was a reasonable nexus between petitioner's failure to participate in anger management programming and the likelihood that petitioner would re-offend on parole. Id. at 11.

Petitioner objects and contends that Board's decision to deny parole was not based on petitioner's failure to participate in rehabilitative programming, but instead was based on three factors: (1) the nature of petitioner's commitment offense; (2) petitioner's criminal history; and (3) petitioner's unstable social history. ECF No. 17 at 2. Petitioner argues that the Board's recommendation that he participate in anger management program was simply a suggestion and

6

1   not a basis for denying parole. Id. at 5. After reviewing the record, the court concludes that the

2   Board relied on petitioner's lack of participation in anger management programming in denying

3   parole. The Board indicated that petitioner would be a more viable candidate for parole if he

4   participated in such programming. See Transcript at 88.

5           Nonetheless, the court cannot agree that petitioner's lack of participation in an anger

6   management class indicates a greater likelihood of recidivism in light of petitioner's

7   psychological evaluation and recent prison behavior. The Magistrate Judge found that there is a

8   nexus between the lack of participation in the anger management programming and recidivism,

9   but does not articulate what that nexus is. ECF. No. 16 at 11. There appears to be no connection

10  between petitioner's lack of participation in programming unavailable to him and petitioner's

11  current level of dangerousness. The court notes that, in denying relief, the San Francisco Superior

12  Court observed that "that petitioner had not participated in any anger management programs even

13  though he had a history of being disrespectful, disobedient, and violent while in prison."

14  However, petitioner's last disciplinary report is from 2000 for delaying a peace officer — an

15  administrative, rather than violent, offense — and the last disciplinary report that petitioner

16  received for engaging in violent behavior is from 1989, over seventeen years before the 2006

17  parole hearing. The Board even commended petitioner for his institutional behavior, stating that

18  petitioner had "done well" and encouraging him to remain discipline-free. Transcript at 88, 90.

19          The court further observes that the Magistrate Judge also noted the Board's consideration

20  of immutable factors — the commitment offense and the pre-offense history — in addition to the

21  lack of participation in anger management programming in denying parole. ECF No. 16 at 10.

22  However, the unchanging factors of the gravity of petitioner's commitment offense and his social

23  and criminal history hold no predictive value regarding his *current* threat to public safety,

24  especially in light of the significant passage of time since the commitment of the offense, and

25  thus provide no support for the Board's conclusion that he was unsuitable for parole at the time

26  of review. Although the Board may rely on the circumstances of the offense in order to deny a

1  parole date, such a decision will be upheld only if there is something about the facts of the crime

2  that continue to show that the prisoner is currently an unreasonable risk. See Lawrence, 44 Cal.

3  4th at 1214; see also Hayward, 603 F.3d at 562. There must be a nexus or an explanation that

4  identifies what about the crime makes the prisoner currently unreasonably dangerous. See id. at

5  552; Rico, 171 Cal. App. 4th at 686; Palermo, 171 Cal. App. 4th at 1107. The facts of the crime

6  or petitioner's history fail to show that petitioner remains an unreasonable threat to the public.

7  Therefore, the court finds that there is no evidence in the record to support the Board's finding of

8  current dangerousness.

### IV. CONCLUSION

10       In denying parole, the Board relied on facts that do not amount to "some evidence" that

11  petitioner currently poses an unreasonable risk of danger to the public. Further, the other facts

12  presented — including, inter alia petitioner's age, his parole plans, good behavior, and favorable

13  psychological reports — constitute evidence that would support parole under § 2402(d). As such,

14  the denial of a parole for one year and the subsequent affirmance by the state courts constitute

15  "an unreasonable application of the California 'some evidence' standard." Cooke, 606 F.3d at

16  1208, 1216; Hayward, 603 F.3d at 563. The Court will, therefore, grant the petitioner's petition

17  for habeas corpus.

18       The Ninth Circuit's recent decision in Haggard v. Curry, discussing the limits of the state-

19  created interest in parole under California law, has limited the relief available to habeas

20  petitioners who successfully challenge a denial of parole. Haggard v. Curry, --- F.3d ----, No. 10-

21  16819, 2010 WL 4015006, at *4-5 (9th Cir. 2010). Haggard held "that where the Board's parole

22  denial decision is not based on 'some evidence' of current dangerousness, the California-created,

23  but federally enforceable, liberty interest in parole gives the prisoner only the right to a

24  redetermination by the Board consistent with the state's 'some evidence' requirement, not the

25  right to release on parole." Haggard v. Curry, 2010 WL 4015006, at *5. The Ninth Circuit based

26  that holding on the California Supreme Court's In re Prather, 50 Cal. 4th 238 (2010), decision,

which determined "that prisoners whose parole denials were not based on 'some evidence' of current dangerousness are entitled under state law only to a new parole suitability decision by the state executive, and not to release from custody or a judicial parole determination", see <u>Haggard v. Curry</u>, No. 10-16819, 2010 WL 4015006, at *4 (citing <u>In re Prather</u>, 50 Cal. 4th at 255). The Board is not, however, a party to this suit. Rather, the court only has the power to enjoin the Warden, who is the respondent to this action. Thus, the court orders the warden to release petitioner within forty-five days if a new parole suitability hearing is not held.

Accordingly, IT IS HEREBY ORDERED that:

1.  The court declines to adopt the Findings and Recommendation of the Magistrate Judge, ECF No. 16;

2.  Petitioner's writ of habeas corpus is GRANTED;

3.  Within forty-five (45) days of service of this order, the Petitioner SHALL BE RELEASED if the Parole Board has not held a new parole suitability hearing in accordance with due process as elucidated in this order.

IT IS SO ORDERED.

DATED: October 29, 2010.



LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

9